In The United States District Court
For The District Of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs<br><br>v.<br><br><br>FAIRBANKS CAPITAL CORP.<br><br>and<br><br>FAIRBANKS CAPITAL HOLDING CORP.,<br><br>Defendants. | Civil Action No. 03-12219-DPW<br><br>Judge Douglas P. Woodlock |
| ALANNA L. CURRY et al.,<br><br>Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FAIRBANKS CAPITAL CORP.<br><br>Defendants | Civil Action No. 03-10895-DPW<br><br>Judge Douglas P. Woodlock |

## OBJECTIONS TO PROPOSED SETTLEMENT AGREEMENT

COME NOW, Objecting class members Mary Keys 1407 E. 92nd Street; Cleveland, Ohio 44106, Jimmie T. Pegler; 10709 Avon Avenue, Cleveland, Ohio 44105; Hilton Smith and Delores Smith; 56 Haskell Drive; Bratenahl, Ohio 44108; Rosemarie Roberts; 4297 E. 126th Street; Cleveland, Ohio 44105; Charese A. Moreland; 3648 Fenley Road; Cleveland Heights, Ohio 44121;

1

Jermaine Howard 3693 Lynnfield Road; Shaker Heights, Ohio 44122; Linda Scott 1469 E. 116th Street; Cleveland, Ohio 44106; Antony Doughty, and Doris Doughty 19408 Sumpter Road; Cleveland, Ohio 44128 and Vanessa McGhee 13424 Casper; Cleveland, Ohio 44110 (Objectors"), and file these objections to the proposed class Settlement Agreement and Release (the "Settlement Agreement") between plaintiff's counsel and Fairbanks . These Objections shall also serve as the Doughty Objector's notice that they intend to participate in this Court's fairness hearing through their counsel.

### INTRODUCTION AND SUMMARY OF ARGUMENT

The Settlement Agreement is a particularly egregious illustration of the kind of class action settlement where the attorneys and the defendants benefit, but the class members receive almost nothing. The Settlement Agreement provides an extremely broad release of liability for Fairbanks, will likely produce a handsome fee for class counsel, and will provide remarkably little relief to class members. The Settlement Agreement is also surrounded with a veil of secrecy which is extraordinary for a class action, ensuring that class members and members of the public are deprived of critical information bearing on the fairness of the deal. This Court should reject the settlement, and unravel the secrecy.

To begin withn the Settlement Agreement provides no relief to a significant segment of the class. Although the class includes both current and former customers of Fairbanks, the sole form of relief provided by the Settlement Agreement is a small monetary payment to purported class members. In return, Fairbanks obtains a total release of liability for its misconduct with respect to all

2

class members. This fact alone renders the Settlement Agreement unfair and unapprovable on its face.

As to those class members who are still Fairbanks customers, the Settlement Agreement is crafted to minimize any payout by Fairbanks. In essence, the Settlement provides monetary payments worth less than $200 to most class members. The Settlement Agreement requires class members to take the affirmative. Thus, even those class members who are theoretically entitled to some relief from this settlement will actually receive nothing. The result, for Fairbanks, is a complete release of liability in exchange for minimal cash payout.

Making matters worse, the Settlement Agreement is designed to minimize opposition to its terms by concealing a host of information that bears directly on its substantive fairness. First, the Settlement Agreement prohibits any public disclosure of its "total value," thereby permitting Fairbanks to conceal the extent of its liability from class members and the general public. Second, the Settlement Agreement prohibits any public disclosure of the total amount of attorneys' fees, thereby permitting class counsel to conceal the discrepancy between his fee and the minuscule relief provided to the class. Third, all the discovery in the case is under seal, thereby limiting access to information regarding the extent of class members' damages and Fairbanks conduct. Finally, and perhaps most astonishing, the Settlement Agreement seeks to bar both class counsel and all class members -- but not Fairbanks -- from speaking out publicly about any aspect of this case. Not only do these provisions violate the public's right of access to the judicial process, but they appear designed to stifle opposition from

3

the class itself -- a result that runs flatly contrary to the fairness inquiry imposed by Rule 23.

All these problems are exacerbated by the class notice, which also appears designed to dampen the ability of class members to detect the true nature of the deal. First, many class members undoubtedly did not receive any notice at all. The only notice provided was via direct mail to class members' last known addresses. Because the Settlement Agreement does not make any provision for notice by publication, any class members who have moved most likely are unaware of this settlement. Second, the notice itself was presented in such a way as to lead many class members to pay little attention to it, and to take it for a mere solicitation. Third, the notice is sketchy on important points, failing to provide crucial details relating to aggregate attorneys' fees and similar matters. Taken together, the inadequacies in the notice make it even more likely that class members are deprived of important information relating to the Settlement Agreement.

For all these reasons, this settlement cannot be approved as fair, adequate, or reasonable. Not only is the class provided with remarkably little relief, but the settling parties have gone to great lengths to limit opposition to the deal by agreeing to secrecy provisions that are virtually unheard of in the class action context. The Court should reject this attempt to use the class action device in this manner.

## STATEMENT OF FACTS

This action arises out of a pattern of illegal mortgage servicing practices by Fairbanks. The parties submitted the Settlement Agreement to the Court, and moved for preliminary approval of the settlement.

Thus, the Settlement's benefits include class members with current and past accounts which were serviced by Fairbanks. The Settlement Agreement also includes several secrecy provisions that limit disclosure of the total settlement value, attorneys' fees, discovery materials, and any negative publicity about Fairbanks.

Under the provisions of the settlement agreement, class members are not provided any information about total settlement value or total attorneys' fees in advance of the objection/opt-out deadline. Although they can theoretically obtain this information from making a special request to review the fee petition, that will not be filed until after the deadline for filing objections has passed. The public at large will never have access to this information about the settlement.

Finally, the Settlement Agreement attempts to prevent any public disclosures about this deal by class counsel and members of the class. Specifically, it provides at ¶ 33 that:

> The Settling Plaintiffs, the Settlement Class and Plaintiffs' Counsel shall not provide any press releases or any statements to the press, of any kind or nature whatsoever, whether on the record or otherwise. Defendants may comment to the press regarding this action, whether written or oral, on the record or otherwise.

Under this provision, only Fairbanks is allowed to talk to the press about this case.

5

A notice was sent out to all class members at their last known address. The Settlement Agreement makes no provision for notice by publication, though the settling parties do not have current addresses for a number of class members. The notice gives no telephone number that class members can call for further information, though it does give the name and address of counsel. Though this is a nationwide class action, the notice suggests that class members who wish to review the settlement agreement may do so "at the Office" of the clerk of this Court in Boston.

## ARGUMENT

### I. THIS COURT SHOULD CLOSELY SCRUTINIZE THE PROPOSED SETTLEMENT.

Unlike settlements in normal individual cases, class action settlements must be approved by the court. Fed. R. Civ. P. 23(e). The Court of Appeals for the Ninth Circuit has stated that "The primary purpose of Rule 23(e) is to protect class members . . . . whose rights may not have been given due regard by the negotiating parties." Ficalora v. Lockheed Calif. Co., 751 F.2d 995, 996 (9th Cir. 1985) The Court's "responsibility [is] to act as guardian of the absent parties . . . . " Norman v. McKee, 431 F.2d 769, 774 (9th Cir. 1970), cert. denied, 401 U.S. 912 (1971). Also see Weinberger v. Kendrick, 698 F.2d 61, 29 (2d Cir. 1982, cert. denied, 464 U.S. 818 (1983) which is cited approvingly in Duhaime v. John Hancock Mutual Life Ins. Co., 177 F.R.D. 54 (D. Mass. 1997). "The burden of proving the fairness of the proposed settlement is on the proponents." In re Matzo Food Products Litig., 156 F.R.D. 600, 605 (D.N.J. 1994).

6

The Ninth Circuit has stressed that class action settlements require careful scrutiny because of the profound differences between them and ordinary settlements:

> [T]he settlement of a class action is fundamentally different from the settlement of traditional litigation . . . . [C]lass members, unlike individual litigants in traditional lawsuits, are bound by the settlement even though they do not individually consent to its terms. Instead, consent is given by class representatives, who derive authority to represent members not by obtaining their consent, but by obtaining a court order designating them the representatives.
>
> * * *
>
> [I]n order to protect the rights of absent class members, the court must assume a far more active role than it typically plays in traditional litigation.

Epstein v. MCA, Inc., 50 F.3d 644, 666-67 (9th Cir. 1995), rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v Epstein, 116 S. Ct. 873 (1996). Similarly, in Amchem Products, Inc. v. Windsor, 117 S. Ct. 2231 (1997), the Supreme Court held that the rights of absent class members must be "the dominant concern" of the court, especially in the settlement context. The Supreme Court held that courts should provide "undiluted, even heightened attention in the settlement context" to certain Rule 23 requirements in order "to protect absentees . . . ." Id.

7

II. THE PROPOSED SETTLEMENT SHOULD NOT BE APPROVED BECAUSE IT WILL PROVIDE NO COMPENSATION TO THE VAST MAJORITY OF CLASS MEMBERS, WHILE GIVING AN EXTRAORDINARILY BROAD RELEASE TO THE DEFENDANTS.

On its face, the Settlement Agreement is an extremely poor deal for class members. In exchange for a very broad release of liability, the agreement provides no relief whatsoever to class members who are former customers, and it creates a mechanism for reimbursing class members who are still customers that will result in very few receiving any compensation.

A. THE PROPOSED SETTLEMENT, ON ITS FACE, PROVIDES NO COMPENSATION AT ALL TO AN ENTIRE CATEGORY OF CLASS MEMBERS -- FORMER CUSTOMERS.

The Settlement Agreement states that former customers of Fairbanks will not receive compensation The settlement is thus of no value to persons who no longer have Fairbanks accounts. The Objectors do not know the precise number of persons who fall in this category. The settling parties must have this information.

It is very likely to constitute a substantial number of class members. This blatant discrimination against former customers renders the whole settlement fatally defective. *See Norman*, 431 F.2d at 774 (court disapproved settlement where "no consideration existed for part of the settlement.") *Cf.* Manual for Complex Litigation § 30.42 at 264-65 (3d ed. 1995) (one factor that may be taken

8

into account in determining the settlement's fairness is whether "particularly segments of the class are treated significantly differently from others. . . .")

B. <u>THE CLAIMS FILING PROCESS ESTABLISHED BY THE PROPOSED SETTLEMENT VIRTUALLY ASSURES THAT THE OVERWHELMING MAJORITY OF THE REMAINING CLASS MEMBERS WILL RECEIVE NOTHING AT ALL.</u>

If Fairbanks had set out to design a claims distribution process that would discourage class members from participating in the settlement, it could hardly have done better than the process set forth in the Settlement Agreement. It is clear that the settling parties have the names and identifying information for all class members. Accordingly, it would be easy for the defendant to automatically credit the accounts of the class members with the amount of the overcharge. Alternatively, the defendant could simply send a check to every single class member.

Unfortunately, the Settlement Agreement does not take either of these two simple steps. Instead, it requires class members to go through the unnecessary process of sending the claim forms back to the defendant.

Studies of claims processes show that very few class members will take the time and effort to go through such a process, and that is particularly likely to be true for sums as small as these. *See* G. Hillebrand & D. Torrence, *Claims Procedures in Large Consumer Class Actions and Equitable Distribution of Benefits*, 28 Santa Clara L. Rev. 747, 752 (1988) (noting that between 3 and 20 percent of class members typically file claims). The leading class action treatise examines empirical data reflecting class member response rates in class action

9

Westinghouse Electric Corp., 949 F.2d 653, 660-61 (3d Cir. 1991). The First Amendment, independent of the common law, also "embraces a right of access to [civil] trials." Publicker Indus., 733 F.2d at 1070.

Rule 26(c), similarly, requires a particularized factual demonstration of good cause before discovery materials may be sealed. This requirement means that, "[a]s a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." American Telephone and Telegraph Co. v. Grady, 594 F.2d 594, 596 (7th Cir. 1978), cert. denied, 440 U.S. 971 (1979).

The public's right to know, protected by the common law, the First Amendment and Rule 26(c), is particularly strong where, as here, there is an intense public interest in a matter. Here, the public is greatly interested in the propriety of the solicitation practices of the credit card industry. In addition, there is an enormous public interest and concern about abusive and collusive class action settlements, with intense scrutiny coming from the public, the media, the Congress, and the members of the Federal Rules Advisory Committee. There can be little doubt that the issues involved in this case and this settlement are of enormous interest to the public.

B. **THE SECRECY PROVISIONS OF THIS SETTLEMENT VIOLATE THE CLASS MEMBERS' RIGHTS AND THE PUBLIC'S RIGHT TO KNOW.**

1. **The Settlement Agreement Improperly Seeks to Keep Secret the Amount of the Settlement, Class**

12

**Counsel's Petition for Fees and Costs, and all Discovery on the Merits.**

The Settlement Agreement provides that the total settlement amount is secret. This is an unprecedented and highly unusual provision, and is completely improper in the class action context. The disposition of the rights of many class members (whether numbered in the hundreds of thousands or millions is not yet known) cannot take place in a vacuum of secrecy. The Settlement Agreement also indicates that all discovery remain sealed, so that the public may never have any information as to the truth of the allegations of the complaint. There has been no particularized showing of facts justifying this secrecy, however. The Settlement Agreement further provides that class counsel's fee petition may be filed under seal, without identifying any "compelling reason" justifying this extraordinary secrecy.

As a number of authorities have recognized, class members have a strong interest in knowing the aggregate amount of attorneys' fees requested by class counsel, so that the class can evaluate whether that fee request played a role in the settlement terms reached.

By providing that the overall size of the settlement itself is confidential, the Settlement Agreement makes it impossible for class members to do the math to determine the aggregate amount of the attorneys' fees to be requested (e.g., 30% multiplied by the total amount of the settlement).

It is true that these figures should appear in the fee petition at some point, so that class members -- but not the general public -- may review them. But counsel for plaintiffs have informed undersigned counsel that they do not even

intend to file a fee petition until after the deadline for class member objections. Taken together, these actions insure that there is no means for class members to determine on a timely basis what the aggregate fees will be, or to determine what the costs or incentive payments will be.

This unusual course of secrecy prevents class members from fairly evaluating the settlement agreement, and thus renders the settlement agreement unfair, for two reasons. First, since the amount that the class members will actually receive depends upon various deductions (of fees, costs and the plaintiffs' incentive awards), the notice's failure to specify the amount of costs or the incentive award prevents class members from determining what they will individually receive if they agree to the settlement. Second, the settling parties' refusal to provide this information in a timely manner hamstrings objectors in their evaluation of the proposed settlement. The absolute magnitude of the attorneys' fees for class counsel is a factor in evaluating the fairness of a settlement. It may well prove to be the case that the amount of attorneys' fees requested will exceed the actual recovery to be received by the class. Further suppose that class counsel will request a fee of $9 million

Under those circumstances, class members would have been far more likely to object if they had been provided with more data about counsel's fee request. As the court stated in Bronco II:

> Further, although class members were notified that
> class counsel would be submitting a request for fees,
> they were not notified of the exact amount requested.

14

> . . . Although class counsel and Ford stress the fact that only 109 out of approximately 690,000 class members notified of the settlement submitted objections, perhaps more class members would have spoken out had they known of the arrangement between Ford and class counsel regarding attorneys' fees.

1995 U.S. Dist LEXIS at *28-29.

It is improper for settling parties to deny class members information about aggregate attorneys' fees, because this information is likely to be of great interest to many class members. As the court stated in *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1130 (7th Cir.), *cert. denied*, 444 U.S. 870 (1979) (emphasis added):

> [T]he record does not provide any reliable estimate of the aggregate amount of attorneys' fees and expenses that GM will eventually pay. We think the proposed settlement's estimate of attorneys' fees and expenses is so vague that *subclass members could not determine the possible influence of attorneys' fees on the settlement in considering whether to object to it.*

The Ninth Circuit has also recognized the class members might be well advised to pay careful attention to the magnitude of attorneys' fees, in light of the risks that class counsel may compromise the class' interests to obtain a fee. See Ficalora v. Lockheed Calif. Co., 751 F.2d 995, 996 (9th Cir. 1985) ("The attorney also can be forced into a situation in which his or her own fee can be enlarged or

15

reduced by concessions made by the class or by members of the class in order to achieve settlement.")

       2. The One-Way Gag Order is Completely Improper.

The Settlement Agreement imposes at ¶ 44 an astonishing, one-way gag order on plaintiffs' counsel and settlement class members that appears designed to prohibit any adverse publicity about Fairbanks. This gag order will further reduce the number of class members who will participate in the settlement. With every party aware of the settlement (except for defendants) barred from speaking about the matter, those class members who do not receive a notice cannot learn about the case, and those class members who do receive the sketchy notice will not have it explained or reinforced. If the defendant made an incorrect statement to the media, neither class counsel nor any class member could provide truthful information to correct the statement. By attempting to invoke this Court's authority in support of a gag order on many thousand persons, the settling parties have sharply infringed upon the First Amendment rights of the class members. See New York Times Co. v. United States, 403 U.S. 713, 714 (1971) (heavy presumption against the constitutional validity of "[a]ny system of prior restraints of expression.")

The effect of this provision is much like the effect of the Settlement Agreement generally: it pleases the defendant, but it harms the class members. Silence about this settlement will benefit FAirbanks(by preventing fewer class members from claiming their recovery); will not affect class counsel (who

16

apparently expect to get paid the same amount without regard to the number of class members who participate); and will harm the class members.

IV. <u>THE INADEQUATE NOTICE VIOLATES THE CLASS MEMBERS' RIGHTS TO RECEIVE INFORMATION ABOUT THE SETTLEMENTS TERMS BEFORE DECIDING WHETHER TO OPT OUT OR OBJECT.</u>

A. <u>THE CLASS MEMBERS HAVE THE RIGHT UNDER RULE 23 AND THE DUE PROCESS CLAUSE TO RECEIVE ADEQUATE NOTICE OF THE SETTLEMENT'S TERMS BEFORE DECIDING WHETHER TO OPT OUT OR OBJECT.</u>

Notice and opportunity to be heard are essential elements of due process in class action proceedings. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). Under Mullane, the notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 314. These due process interests of class members were not adequately protected by the notice provided here, which was inadequate in several important respects.

B. <u>THE NOTICE IS LIKELY TO HAVE DEFLECTED, NOT RAISED, MOST CLASS MEMBERS' ATTENTION.</u>

The Notice was included in class members' card statements, ensuring that most class members would never read it. It was presented in such a way as to look like a solicitation from the bank rather than a notice about litigation. Id. at 7.

17

It gives no phone number to call, and appears to suggest that class members must travel to Boston to review the Settlement Agreement. Taken together, the notice plan as currently outlined is not sufficient to adequately notify class members.

V. <u>THE CLASS REPRESENTATIVES AND THEIR COUNSEL DID NOT ADEQUATELY REPRESENT THE INTERESTS OF PERSONS WHO DO NOT STILL HAVE ACCOUNTS WITH FAIRBANKS.</u>

A. <u>UNDER THE FEDERAL RULES AND THE CONSTITUTION, THE SETTLEMENT AGREEMENT CANNOT BE APPROVED UNLESS THE CLASS REPRESENTATIVES AND CLASS COUNSEL ADEQUATELY REPRESENTED ALL CATEGORIES OF CLASS MEMBERS.</u>

One of the essential requirements of due process in class actions is the requirement that the representative parties -- and their counsel -- must fairly and adequately represent the interests of the class. This requirement was recently reaffirmed by the Court in Amchem Products, Inc. v. Windsor, 117 S. Ct. 2231 (1997). Rule 23(a)(4) provides that a class action may be maintained only if "the representative parties will fully and adequately protect the interests of the class."

According to the Notice mailed to all classs members (at paragraph 8, page 5 of the Class Notice), a class member who has not submitted a Request for Exclusion may submit objections. However, any class member who does not feel that there is adequate information to determine whether to opt out or file a claim, will likewise be frustrated in detailing objections in this proceeding because the Settlement Agreement mandates that plaintiffs and class counsel "use their

18

best efforts to resist and oppose any or all nonmeritorious Objections to the Settlement, any or all proposed interventions". (Section V, paragraph 1 and section V, paragraph 4 thereof). Moreover, in section V, paragraph 6 of the Settlement Agreement, it goes on to require both the plaintiffs and defendants NOT TO "solicit, encourage or assist, in any fashion, Class Members to opt out"; "solicit, encourage or assist, in any fashion, any effort to object to the settlement". Likewise, Fairbanks warrants that it will oppose opbjections and not cooperate with objectors or prospective opt outs. (Section V, paragraph 5). Thus, it is entirely clear that any class member who has questions about this agreement will have no reptresentation of any kind. Indeed, unless such situated class member has the resources to hire separate counsel in Massachussetts, even if he or she had previously engaged counsel to address concerns regarding Fairbanks in some other jurisdiction, such class member will be deprived of any meaningful opportunity to make such objections. (Local Court Rules require local counsel to participate in the proceeding where potential parties are represented by counsel in other jurisdictions).

B. <u>BY CRAFTING AND AGREEING TO A SETTLEMENT AGREEMENT AND SCHEME OF NOTICE THAT COMPLETELY IGNORE THE INTERESTS OF AN ENTIRE CATEGORY OF CLASS MEMBERS, CLASS COUNSEL HAVE FAILED TO ADEQUATELY REPRESENT THOSE PERSONS WHO DO NOT STILL HAVE FAIRBANKS ACCOUNTS.</u>

The Settlement Agreement class in this case creates a clear conflict between two groups of class members: persons who still have Fairbanks

## VI. CONCLUSION

On its face, this settlement provides no compensation to an entire category of class members. In fact, the settlement will provide no recovery to 95% or more of the class members. This court should reject the secrecy and reject the settlement as well.

Respectfully submitted,

_____
Darryl E. Pittman, (Ohio Reg. # 034194)
Dpittman@stratos.net
Gary Cook (Ohio Reg. # 021240)
Gcookesq@yahoo.com
James Alexander, Jr. (Ohio Reg. # 0033384
Jamesalexanderjr@core.com)
Pittman, Alexander, Cook and Associates
Attorneys for Objectors
2940 Noble Road, #202
Cleveland Heights, Ohio 44121
216-382-8586-Phone
216-382-8580-Fax

## CERTIFICATE OF SERVICE

A copy of the foregoing OBJECTIONS TO SETTLEMENT AGREEMENT were served by regular United States Mail upon counsel of record as listed below, via United States Mail, postage prepaid, addressed as follows:

Gary Klein, Esq.
John Roddy, Esq.
Grant & Roddy
44 School Street, Suite 400
Boston, MA 02108

Kelly M. Dermody, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111

21