# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUESETTS

**UNITED STATES OF AMERICA,**

        Plaintiffs

    **v.**

**FAIRBANKS CAPITAL CORP.**

      **and**

**FAIRBANKS CAPITAL HOLDING CORP.,**

      Defendants.

**ALANNA L. CURRY** *et al.*,
**Individually and on behalf of all others
similarly situated,**

      Plaintiffs,

    **v.**

**FAIRBANKS CAPTIAL CORP.,**

      Defendant.

Civil Action No. 03-12219-DPW

**Judge Douglas P. Woodlock**

Civil Action No. 03-10895-DPW

**Judge Douglas P. Woodlock**

## MOTION TO INTERVENE

Now come Linda Scott, Anthony and Doris Doughty, Mary M. Keys and

Vanessa McGhee by and through their attorneys and move this court for leave to

intervene in the above captioned action. Movants seek intervention as a matter of

right pursuant to Rule 24(a) (2) and, in the alternative, by permission, pursuant to

Rule 24 (b) of the Federal Rules of Civil Procedure. The intervention should be

allowed because Movants can satisfy each of the requirements of Federal Rules

24(a)(2) and 24(b)(2).

The moving parties, with others, have concurrent with the filing of this

Motion to Intervene, also filed Objections to the Settlement and Release.

Movants incorporate fully herein the arguments and citations set forth in the

Objections. The facts and law which support this motion are more fully set forth in

the attached memorandum.

Respectfully submitted,

Darryl E. Pittman, (Ohio Reg. No. 0034194)
dpittman@stratos.net
Gary Cook (Ohio Reg. No.021240)
Gcookesq@yahoo.com
James Alexander, Jr. (Ohio Reg. No.0033384)
Jamesalexanderjr@core.com
**Pittman, Alexander, Cook and Associates**
Attorneys for Intervenors
2940 Noble Road, #202
Cleveland Heights, Ohio 44121
216-382-8586- Phone
216-382-8580- Fax

# Memorandum

## I. Preliminary Statement

The Movants/intervenors are plaintiffs in a putative class action pending in Ohio which charges defendant Fairbanks Capital with predatory lending and predatory mortgage servicing. The intervenors filed an action in the Cuyahoga County Court of Common Pleas on January 28, 2004 to redress Defendants, Fairbanks Capital Corporation and Fairbanks Capital Holding Corporation's (hereinafter collectively referred to as "Fairbanks")various predatory lending and loan servicing practices.(the "Ohio Case" a copy of the Complaint in that case is attached hereto as Exhibit "A.")  In the Ohio Case, plaintiffs charge that Fairbanks, in conjunction with various mortgage originators, pursued unsophisticated borrowers in exploitive home equity loans, charged illegal and exploitive fees, refused to credit payments, and then pursued foreclosure.

The Ohio Case was brought pursuant to the Ohio Consumer Sales Practices Act as set forth in Ohio Revised Code, Sections 1345.01 *et seq*. ("CSPA"), which prohibits all deceptive, unfair, or unconscionable acts or practices in consumer transactions; The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., ("FDCPA"); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.; Sections 6 and 16 of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2605 and 2614 and Ohio common law.

The case was filed in Cuyahoga County, Ohio because in that county Fairbanks conducted activities that gave rise to the claims for relief; and the real

estate that is the subject of the action is situated in Ohio. The named Plaintiffs in the Cuyahoga County, Ohio action are as follows:

1.  Anthony and Doris Doughty, residents of Warrensville Hts., Ohio;
2.  Linda Scott, of Cleveland, Ohio;
3.  Mary M. Keys, of Cleveland, Ohio; and
4.  Vanessa McGhee, of Cleveland, Ohio

Dozens of other persons damaged by Fairbanks' actions have been identified by the plaintiffs and either have or will opt out of the proposed settlement in this case. In addition to the remedies available under federal statutes, the Ohio Plaintiffs are also asserting claims under Ohio Statutes that regulate mortgage lenders and consumer transactions.

After filing their petition with the court in Ohio, Movants learned that this court had enjoined the initiation and prosecution of any litigation that purports to challenge Fairbanks' unlawful servicing practices. In addition, upon review of the Court's conditional approval of the class action settlement agreement in Curry, Movants learned that the terms of the settlement will substantially impair significant procedural and substantive rights of the Ohio plaintiffs. Among the rights impaired are:

1.  The movants right to proceed in a representative capacity;

2.  The movants right to recover damages under Ohio statutes;

3.  The movants are bound to the terms of the settlement if they do not act affirmatively to opt out;

4.  The movants redress is limited to the amounts set forth in the notice, which may be substantially less than the amount of the actual damages.

Both the preliminary injunction order entered by this court enjoining the initiation of new class action lawsuits against Fairbanks, and the settlement agreement make provisions for intervention. For example, paragraph II B. 7 of the Settlement Agreement and Release (the "Settlement Agreement") establishes the deadline for filing motions to intervene to wit: "at least twenty (20) days of the Fairness Hearing" and by no later than April 9, 2004, the presumed date for filing objections. Then paragraph II B. 8 of the Settlement Agreement specifically establishes the time deadline for class members wishing to intervene.[1] Therefore, this motion is within the parameters of prior court orders addressing the question of intervention.

## II.    Statement of Facts

Counsel for movants represent four (4) homeowners residing in Ohio and who are parties to the class action against Fairbanks pending in the United States District Court for the Northern District of Ohio, Eastern Division.[2]. In addition, counsel for movants actively represent twenty (20) homeowners in various stages of litigation with Fairbanks over predatory lending and loan servicing.[3] In addition, movants have provided consultation to up to eighty (80) other homeowners that were or are being adversely affected by Fairbanks' practices.  The filing of the Ohio Case on January 28, 2004, raising class wide

---

[1]     The objection date is not completely clear since the "class notice" seems to limit the persons who can object to: "Any Class Member who has not filed a timely Request for Exclusion"
[2]     The Case is captioned Anthony and Doris Doughty, et al v. Fairbanks Capital CORP. etc. et al., Case No 04-520660.
[3] Many of these cases involve claims against Fairbanks that are asserted as counterclaims or offsets or both in foreclosure cases.

claims of predatory lending and predatory loan servicing by Fairbanks culminated over 8 months work, research and investigation on behalf of Movants.

While the Ohio Case was in the final stages of preparation, unbeknownst to Movants the case in this court was proceeding to settlement. The case at bar was settled almost as soon as it was filed. The Settlement Agreement and Release ("Settlement Agreement") was consummated on November 14, 2003. On December 8, 2003 this court entered an order preliminarily approving the settlement. On December 1, 2003 the settling parties jointly moved the court for a preliminary injunction and on December 23, 2003, the court granted the injunction prohibiting, among other matters, the following:

> ". . . filing, commencing, prosecuting, intervening in, participating as class members in, any lawsuit in any jurisdiction based on or relating to the claims and cause of action, or facts and circumstances relating thereto in this action. . . "

Section 2(a) of Court's Order of December 23, 2003.

On the basis of personal knowledge, Counsel for Movants are certain that each of these individual have a great deal at stake in the present litigation. In many cases the very right to stay in their home is in play. Many of these individuals have lost thousands of dollars in excessive and illegal fees and charges, collateral cost and in litigation expenses. Each of these individuals have a desire to be made whole.

These homeowners have a significant protectible interest in the present litigation. Whether they like it or not, whether they opt in or out or do nothing, they will lose valuable procedural and substantive rights. The most significant deprivation of procedural rights are the provisions of the Settlement Agreement

that eliminate the right of any class member to participate in any class or representative proceeding against Fairbanks. Movants have no choice in the matter.[4] They are forbidden from pursing their claims collectively whether they received the monetary benefits of the settlement or not.[5]  Thus, individuals who choose not to participate in this preceding lose the right to litigate their claims against Fairbanks in the most efficient and resourceful means possible. The settlement agreement and injunction means that even those class members who eschew the settlement and its terms are still deprived of a valuable procedural right.

 This arrangement allows Fairbanks to use its extensive corporate resources to oppose claimants who for the most part are impecunious. Fairbanks can stomp out individual claims one by one, while claimants are prohibited from pooling their resources. Accordingly, the Settlement Agreement renders the playing field permanently uneven for the individuals who opt out.

 Two documents were mailed to class members pursuant to the Settlement Agreement. The first was a Notice of Proposed Class Action Settlement and Settlement Hearing. (the "Settlement Notice") A copy of the Settlement Notice is attached hereto as Exhibit "B." The second document is the Claims Form-Late

---

4 Another imposed waiver of procedural rights is contained Section 8 of the Settlement Notice which provides that class members who opt out may not file objections to the proposed settlement or be heard at the fairness hearing.

5 The provision of the Settlement Agreement which prevent opt-outs from proceeding as a class violate Rule 23. This court has recognized that if there are sufficient numbers of opt-outs a subclass of opt-outs may be created. See e.g. *Duhaime V.John Hancock Mutual Life Insurance Company,* 177 F.R.D. 54 (D. Massachusetts.1997)

Fees/Default Related Fees. See example of Claims Form attached hereto as Exhibit "C." (the "Claims Form").

The Claims Form is grossly misleading. These forms contain amounts that purport to be the value of the overcharges and consequently the amount of the class member's claim. The implication is that the class member will receive this sum if the class member returns the form. These figures are illusory and misleading. Evidence shows that Fairbanks has serviced approximately 500,000 loans in the period covered by the settlement. Simple math shows Fairbanks has paid only $ 80.00 into the settlement fund for every loan it serviced during the relevant period. If only 10% of the individuals whose loans were serviced by Fairbanks return claim forms only $ 800.00 will be available per claimant. These facts are not disclosed to class members in the Claims Form or in the Settlement Notice. 6

Those homeowners who opt in and submit claim forms have a significant protectible interest inasmuch as the remedy they will receive will likely be significantly less than their actual damages. The Settlement Notice form is deficient inasmuch as it fails to inform class members that it is very likely that the recovery they will receive will be de minimus. This lack of disclosure when coupled with the dollar figures specified in the Claim Forms render the Settlement Notice deceptive and misleading. Accordingly, even those members of the class who submit Claims Forms have a significant protectible interest in

---

6 There is a discussion in the Settlement Notices of the fact that the sums received by claimant will be in proportion to the total number of claims. No information, whatsoever, is given regarding the total number of eligible claimants or guidance as to the number of expected claimants.

insuring that the settlement process is transparent enough for them to make an informed decision as to whether to accept the money and waive their more extensive claims.

In addition to the foregoing deficiencies, the Settlement Agreement contains a plethora of pitfalls and waivers for unwary class members. It is clear that the procedures for notice to class members is calculated to discourage as many people as possible from submitting claims.

Also relevant to this motion are the agreements of parties set forth in Section V, Representations and Warranties. Settlement Agreement, pages 36-39. This section of the agreement makes it clear that class members are voiceless and unrepresented. Section V contains the agreement by all counsel to collude against claimants, class members who opt-out and class members who do not respond in any way. Both class counsel and defense counsel agree to:

  i)     defend the courts jurisdiction,

  ii)    take steps to prevent competing litigation,

  iii)   resist and oppose any non meritorious objections to the settlement, and

  iv)    oppose any proposed intervention.

More egregious are provisions that both sides will oppose any attempts to opt out on other than an individual basis, thus impeding the class members who opt-outs' right to counsel.

There are two provisions of Section V which make it crystal clear that class counsel is no longer representing the interest of all class members. Section V (2) states:

> ". . . Class counsel represent and warrant that they shall express unequivocal public and private support for the Settlement and this Agreement and shall not **disparage, criticize or comment unfavorably on Fairbanks or Fairbanks-Related Parties.** "
> (emphasis added).

Archie Bunker might describe this agreement as an agreement by Class Counsel to "stifle themselves." What's more, Class Counsel have agreed to abandon any class member who is not satisfied with the terms of the Settlement Agreement, to wit : Plaintiffs and class counsel are not permitted to commence any new litigation, _object to any aspect of the settlement_, opt out, solicit, encourage or _assist in any fashion class members to opt out._(emphasis added). There is no escaping the fact that untutored laymen are left by these provisions to fend for themselves in this treacherous legal forest.

Finally, these provisions make it clear that Class Counsel now has a substantial conflict of interest with parties who find that certain provisions of the settlement are unclear, unfair and/or inadequate. Because of the agreements set forth in Section V, Class counsel cannot point out or address any flaws, oversights or mistakes in the Settlement Agreement. Thus, Class members are forced to accept that Settlement Agreement as perfect as it stands and that there is no room for improvement. The most disturbing aspect of this agreement is that class counsel have consented to transform their role from that of an advocate to that of a cheerleader.

10

III.    **Standards Relative To Motion to Intervene**

The Court of Appeals in this circuit has clearly articulated the requirements

for intervention. It has stated:

> A party that desires to intervene in a civil action under Rule 24(a)(2) must
> satisfy four conjunctive prerequisites: (1) a timely application for
> intervention;(2) a demonstrated interest relation to the property or
> transactions that forms the basis of the ongoing action; (3) a satisfactory
> showing that the disposition of the action threatens to create a practical
> impairment or impediment of its ability to protect that interest: and (4) a
> satisfactory showing that existing parties inadequately represent its
> interest.(citations omitted)

*Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, headnote 2 (1st Cir. 1998);

*Daggett v. Comm. On Gov. Ethics and Election Practices,* 172 F.3d 104, 109,

113 (1st Cir. 1999).

Movants in the case at bar can satisfy all of these prerequisites.

(1)    The application is clearly timely as it is before the court in
       accordance with the deadlines set forth in the Settlement
       Agreement;

(2)    The applicants have an interest relating to the subject matter of the
       action in that they each meet the definitions of the affected class;

(3)    The applicants are clearly at risk of having their respective and
       collective interests impaired, as a practical matter, by the action's
       disposition, and

(4)    As is demonstrated hereafter, there is inadequate representation of
       their interests by the existing parties."

Under the standard of appellate review in this Circuit, the Appeals court ". .

. will reverse the denial of a motion to intervene as of right 'if the [trial] court fails

to apply the general standard provided by the text of Rule 24(a)(2), or if the court

reaches a decision that so fails to comport with the standard as to indicate an

abuse of discretion.'" *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st

Cir. 1998) (quoting *International Paper Co. v. Town of Jay*, 887 F.2d 338, 344 (1st Cir. 1989)). The First Circuit Court of Appeals has also stated: "'abuse of discretion' . . . may be a misleading phrase. Decisions on abstract issues of law are always reviewed de novo; and the extent of deference on 'law application' issues tends to vary with the circumstances." *Cotter v. Mass. Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 34 (1st Cir. 2000), *cert. denied*, 531 U.S. 1072 (2001).

A.     **MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT**

In the case at bar Movants meet all the criteria entitling them to intervene as a matter of right. In the instant matter the timeliness requirement is easily met, because the court has set a deadline of April 9th 2004 for parties wishing to intervene to file their motions to intervene. The Settlement documents and the notice to class members provide class members with a right to intervene. See *Order Preliminarily Enjoining Other Litigation and in Preliminarily Approved Settlement Agreement*. These documents, part of the record in this case, at paragraphs II B6 and B8 of the Settlement Agreement, direct class members wishing to intervene to file motions within the time permitted to do so.

The second requirement, that the applicant[s] have an interest relating to the subject matter is clearly present in the instant matter.  This requirement pertaining to a protectible interest is satisfied because the claims asserted in the Ohio Case are similar to the claims made in the matter before this court. While the claims are similar, it is important to note that the proposed settlement that is before the court does not address all the claims made by Movants in the Ohio

Case. To the extent that several concerns of Movants are not addressed in the proposed settlement, they have an interest in presenting those claims to the Court for its consideration.

The following is a list of some but not all of the issues not addressed by the Settlement Agreement:

1. No specific form for is provided for class members who choose to opt out of the instant matter is included in the mailings to class members.

2. There is a major disparity between the amount that the purported class members are to receive individually and the amount that the attorneys for the plaintiffs are to receive.

3. The proposed settlement agreement does not provide for adequate remedies for class members who have lost their homes because of the illegal practices that Fairbanks has used in the foreclosure process.

4. The Movants have an interest in the matter before the court due to the fact that the proposed settlement agreement releases several entities, such as Fairbanks Residential Real Estate Review, PMI and its officers and shareholders, assigning entities, and forced place insurers who are not parties to this litigation.

5. Class Members who do not submit a claim forms are bound by the terms of the proposed settlement.

6. There is no specificity in relation to the amounts that the putative class members will receive from the settlement. It is not made explicit that approximately Five Hundred Thousand (500,000) Fairbanks customers are eligible to participate in the Forty Million Dollar ($40,000,000) settlement fund. This amounts to only Eighty Dollars ($80) per class member.

7. The restriction on counsel for the plaintiffs' ability to comment on the settlement agreement creates a conflict between counsels' interest and the interest of the class.

8. There is no provision for representation of those parties who choose to opt out of the Settlement Agreement.

9. The notice of the settlement is an inadequate notice because it is unclear as to the rights of the parties relative to the settlement agreement.

10. In addition the disclosure of payment of attorney fees is far in excess of the payment to the purported class members.

11. The opt-out provisions require that all signatories to joint promissory notes also be signatories to the opt-out procedure; thwarting the legitimate claims of putative class members who have competing interests with each other or among each other such as divorcing spouses.

12. The Settlement Agreement establishes that the deadlines of the Fairness Hearing, Objections and Intervention are to be included in the "Notice" or "Summary Notice", although neither term is defined in the definitions section of the Settlement Agreement. Moreover, there does not appear to be a document which can be construed as a "Summary Notice"

13. The Settlement Notice limits the Right to File Objections to only those class members who fail to timely file a Request for Exclusion.

This small list demonstrates that there are meritorious issues regarding the adequacy of the terms of the proposed settlement to protect Movants' interest.

The third prong of the test is whether the intervenors' ability to protect their interest will or may be impaired by the disposition of the action. In the instant matter the disposition of the matter without the intervention of Movants will substantially impair their interest because the current settlement as proposed does not address issues described above. Because of the Settlement Agreement restrictions on present counsel in these proceedings, there is no one before the court who can question the settlement or to request the court to modify the agreement so that it can be made more just. Thus, if intervention is denied class members will be left without an adequate remedy. Accordingly, there can be no dispute that Movants' interest will be impaired by the disposition of this action on the proposed terms.

14

Finally, the fourth prong is whether the existing parties adequately represent the interest of the proposed intervenors. Movants contend that their interest is not adequately protected because of the agreements of plaintiff's counsel to not raise any objections or criticism of the settlement terms.

As indicated in *Daggett*, at pages 113-114 as follows:

> The reality is that, as courts have moved from formalistic restrictions to a practical "interest" requirement for intervention as of right, so tests of 'inadequacy' tend to vary depending on the strength of the interest. **Courts might require very little 'adequacy' if the would be intervenor's home were at stake** and a great deal if the interest were thin and widely shared.
> (emphasis added).

This statement applies to the case at bar because each of Movants homes are at stake and nothing in the proposed settlement addresses their interest. The Court has held that "An intervenor need only show that representation **may be inadequate, not that it is inadequate**". *Trbovich v. United Mine Workers, 404 U.S. 528, 538, 30 L. Ed. 2d 686, 92 S. Ct. 630 n.10 (1972)(emphasis added)*. In *Moosehead Sanitary Dist. v. S.G. Phillips Corp., 610 F.2d 49, 54 (1st Cir. 1979)*, the Court concluded that ordinarily petitioners must "demonstrate adversity of interest, collusion or nonfeasance." However, we implied that evidence that parties are "sleeping on their oars" or "settlement talks are underway" may be enough to show inadequacy. *Id. at 54-55*.

The speed with which the parties concluded the settlement given the glaring omissions it contains, provide additional reasons to closely scrutinize the agreement. For example the court in *Conservation Law Found. Of New England, Inc. v. Mosbacher*, 966 F.2d 39 (1st Circuit, 1992), approved a determination

reached in *Sanguine, Ltd. v. United States Dep't of Interior, 736 F.2d 1416, 1419 (10th Cir. 1984),* because of the fact that the government agreed to a consent decree 33 days after the suit was filed. These facts were deemed sufficient to demonstrate inadequate representation. While agreement in the case at bar was not reached quite as quickly,  the parties in the instant action agreed to a class action settlement within four months after service of the complaint. This is an enormous settlement, with enormous ramifications because if approved, it will settle the claims of class members throughout the United States. Structured as it is, this court is being asked to approve the settlement without the benefit of fully informed arguments from counsel free to dissent from its terms. This deficiency can only be cured if the court permits the intervention as requested.

## B.    MOVANTS ARE ENTITLED TO PERMISSIVE  INTERVENTION

Movants may also intervene in this matter pursuant to Rule 24(b) Fed. R. Civ. Pro. Permissive intervention is available "[u]pon timely application" when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b) (2). A decision granting or denying permissive intervention may only be reversed on appeal for an abuse of discretion. *See Daggett, Id. at.* Clearly, Movants meet these minimal criteria. Thus, the court can consider almost any factor rationally relevant to the motion and enjoys very broad discretion in granting or denying the motion. *See Daggett,* citing *United States Postal Serv. v. Brennan,* 579 F.2d 188, 191-92 (2nd Cir. 1978). As the *Brennan* court held, the fact that the applicants may be helpful in fully developing the case is a reasonable consideration in deciding on permissive intervention. *Id.* at 192.

16

These considerations weigh heavily in favor of the court granting the instant motion.

## IV.    Conclusion

It may not be apparent on the record before the court but this case involves issues which are highly provocative. The volume of litigation that was consolidated in this court demonstrates Fairbanks' practices offended a large percentage of its customers. There is a rampant perception in the public at large, supported in no small degree that while this Settlement has been in the works, Fairbanks has been unrepentant and has continued to engage in conduct that is predatory and unconsciousable, that the biggest beneficiary from this agreement is Fairbanks.

The Settlement Agreement is not perfect and can be made better. As now stands only parties like Movants raise issues that will assist the court in fashioning an agreement that satisfies the requirements of due process and fundamental fairness. This is the most compelling reason for granting the instant motion.

For this reason and upon the foregoing facts and applicable law it is respectfully submitted that the motion to intervene should be granted.

Respectfully submitted,

Darryl E. Pittman, (Ohio Reg. No. 0034194)
Gary Cook (Ohio Reg. No.021240)
James Alexander, Jr. (Ohio Reg. No.0033384)
**Pittman, Alexander, Cook and Associates**
Attorneys for Intervenors
2940 Noble Road, #202
Cleveland Heights, Ohio 44121
216-382-8586-Phone; 216-382-8580-Fax

17

## CERTIFICATE OF SERVICE

A copy of the foregoing MOTION TO INTERVENE was served by regular United States Mail upon counsel of record as listed below, via United States Mail, postage prepaid, addressed as follows:

> Gary Klein, Esq.
> John Roddy, Esq.
> Grant & Roddy
> 44 School Street, Suite 400
> Boston, MA 02108

> Kelly M. Dermody, Esq.
> Lieff, Cabraser, Heimann & Bernstein, LLP
> 275 Battery Street, 30th Floor
> San Francisco, CA 94111

> Thomas A. Hefferon, Esq.
> Goodwin Procter LLP
> Suite 500
> 1717 Pennsylvania Avenue, N.W.
> Washington, DC 20006

> Niall P. McCarthy, Esq.
> Cotchett, Pitre, Simon & McCarthy LLP
> San Francisco Airport Office Center
> 840 Malcolm Road, Suite 200
> San Francisco, CA 94010

> Daniel Mulligan, Esq.
> Jenkins & Mulligan
> 660 Market Street, 3rd Floor
> San Francisco, CA 94104

> Anita Johnson, Esq.
> Assistant United States Attorney
> Suite 9200 Moaklcy Courthouse
> Boston, MA 02210

Lucy B. Morris, Esq.
Eric Imperial. Esq.
Allison I. Brown, Esq.
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, DC 20580

on this 6rd day of April, 2004.

Darryl E. Pittman
Gary Cook
James Alexander, Jr., Esq.